# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN LYNN DICKINSON<br><br>              Petitioner,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security Administration,[1]<br><br>            Respondent. | Case No. 3:18-CV-00162-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Susan Dickinson's Petition for Review of the Respondent's denial of social security benefits, filed April 13, 2018. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR). For the reasons that follow, the Court will remand to the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on March 24, 2014, alleging disability based on a combination of impairments, including a learning disability, diabetes, stroke, short-term memory loss, and high blood pressure. This application was denied initially and on reconsideration, and a hearing was held on May 25, 2016, before Administrative Law Judge (ALJ) Marie Palachuk. After hearing testimony from Petitioner, medical experts Lynne Jahnke, M.D., and Donna Veraldi, Ph.D., vocational expert K. Diane Kramer, and lay witness Cheryl Lorraine Teets, ALJ Palachuk issued a decision on August 1, 2016, finding Petitioner not disabled. (AR 12-1.) Petitioner timely requested review by the Appeals Council, and also submitted new evidence for consideration. The Appeals Council denied Petitioner's request for review on February 12, 2018.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty-four years of age. Petitioner did not graduate from high school, but later obtained her GED. Petitioner had no prior relevant work experience.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ

found Petitioner had not engaged in substantial gainful activity since her application date of March 24, 2014. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's morbid obesity, diabetes mellitus, history of depression, and borderline intellectual functioning severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. The ALJ specifically considered Listings 9.00 (Endocrine disorders), 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.05 (Intellectual disability).

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's RFC, the ALJ found Petitioner had no past relevant work, and therefore proceeded to step five.

The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. At step five, the ALJ determined Petitioner retained the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b), with limitations. The ALJ found Petitioner was limited to occasional postural activities except for climbing

ladders, ropes or scaffolds. Petitioner should also avoid kneeling or crawling; concentrated exposure to industrial vibration; and all exposure to hazards such as moving machinery and unprotected heights. The ALJ found Petitioner retained the ability to understand, remember and carry out simple, routine tasks and instructions; maintain attention and concentration on simple, routine tasks for two-hour intervals between regularly scheduled breaks; and perform in a predictable environment with infrequent changes in the work setting/routine. However, the ALJ determined Petitioner would not be able to maintain attention and concentration in a fast-paced, production rate or assembly line type of work setting, and would be unable to multi-task.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms she alleged, but that her statements about the intensity, persistence, and limiting effects of her conditions "were not entirely consistent with the medical evidence and other evidence in the record…." (AR 37.) First, the ALJ determined that the objective medical evidence did not support the level of impairment claimed, because there was no objective medical evidence to support Petitioner's claims of a stroke, vision problems, left sided weakness, loss of memory, or fatigue. (AR 38.) Second, the ALJ determined Petitioner's failure to seek treatment for her mental impairments undermined her credibility. (AR 38.) Third, the ALJ concluded Petitioner's "extremely poor work history" and her unemployment for reasons unrelated to her alleged disabling medical impairment suggested "very poor work motivation." (AR 39.) And finally, the ALJ cited Petitioner's "reasonably high-functioning activities of

daily living that are not consistent with her allegations of disability." (AR 39.)

Based upon the testimony of the vocational expert, the ALJ found Petitioner not disabled because she found Petitioner could perform the requirements of representative occupations such as small parts assembler, mail clerk, and office cleaner I, all of which fell within the exertional category comprising light work. (AR 41.)

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be

upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the Appeals Council committed legal error by not considering new and material evidence submitted with the request for review, in violation of 20 C.F.R. § 416.1470(b). Petitioner asserts also the ALJ erred for two reasons. The first is the ALJ's failure to consider relevant lay witness testimony from Petitioner's sister, Cheryl Teets, who testified at the hearing. And second, Petitioner contends the ALJ failed to provide specific, clear and convincing reasons for discounting Petitioner's testimony regarding the severity of her impairments.

Respondent argues the Appeals Council reasonably determined the evidence submitted to it was not material. Additionally, Respondent contends Petitioner's argument regarding the ALJ's failure to consider relevant lay witness testimony was not sufficiently raised in Petitioner's opening brief, and that the Court should not consider the issue. Finally, Respondent contends the ALJ provided numerous specific, clear and convincing reasons supported by substantial evidence to support the adverse credibility determination. Each issue will be discussed below.

## 1.     New Evidence Submitted to the Appeals Council

The Social Security regulations provide that the Appeals Council may review a case in a number of scenarios, including when a claimant submits "additional evidence that is new, material, and relates to the period on or before the date of the hearing

decision [by the ALJ], and there is a reasonable probability that the additional evidence would change the outcome." 20 C.F.R. § 404.970(a)(5).[2] There is no good cause showing required for the claimant to submit additional evidence to the Appeals Council. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012). And, "evidence submitted to and considered by the Appeals Council is not new but rather part of the administrative record and properly before the district court." *Id.*

Here, the additional evidence includes a medical imaging report with results of a CT head/brain scan without IV contrast performed on June 20, 2016, and medical records dated September 12 through October 4, 2016, submitted to the Appeals Council for consideration after the hearing before the ALJ and the ALJ's decision. (AR 2.) The CT scan results confirmed evidence of an "old right middle cerebral artery infarct." (AR 47.) A follow-up appointment with Petitioner's treating physician, Dr. Lois Niska, on October 4, 2016, confirmed loss of left peripheral vision, noted the "remote incident 20+ years ago," with "no recovery of peripheral vision and depth perception left eye, does not qualify for drivers license. Loss of grip strength left hand." (AR 25.)

The record indicates the Appeals Council "did not consider and exhibit" the June 20, 2016 imaging report, because the evidence did "not show a reasonable probability that it would change the outcome of the decision." As to the additional medical records submitted, the Appeals Council's decision states that it reviewed the evidence, but

---

[2] The Regulation was amended effective in May of 2017. 81 Fed. Reg. 90987. However, the amended regulation is not applied retroactively, and the parties agree the amended regulation does not apply. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

because the records covered the period September 12, 2016, through October 4, 2016, and the ALJ decided the case through August 1, 2016, the evidence did not relate to the period on or before the hearing decision, as required by the regulations. Therefore, the Appeals Council declined to consider the content of the additional medical records. (AR 2.) The Appeals Council's decision noted that, should Petitioner wish the Commissioner to consider whether she was disabled after August 1, 2016, she would need to reapply based upon a new time period. *Id*.

Upon review, the Court finds that the imaging report and the review of the same by Dr. Niska in 2016, as well as the corresponding examination notes, relate to the period on or before the date of the AJL's hearing decision. Petitioner testified to having a stroke, although she could not remember when it occurred. The imaging report confirmed Petitioner had a stroke, which occurred nearly twenty years prior to June of 2016. Dr. Niska's treatment note indicates she reviewed the CT scan results, which showed "extensive right middle artery infarction," and she confirmed the symptoms that remained from the stroke, which included loss of peripheral vision and depth perception, and loss of grip strength in the left hand. (AR 25.) Accordingly, because the stroke and the resulting symptoms occurred prior to August 1, 2016, the records relate to the period prior to the ALJ's written determination. Contrary to Respondent's argument, the

October 4, 2016 treatment note[3] is retrospective, because it directly links Petitioner's complaints of loss of grip strength and vision impairments to the stroke, which occurred well before the hearing before the ALJ and the August 1, 2016 date of the ALJ's decision. (AR 271, 274, 287, 292, 74, 75.)

On appeal to this Court, Petitioner must demonstrate that there is a "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing" if it had been before the ALJ. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984) ("New evidence is material when it creates a reasonable possibility that the outcome of the case would be different."). Because the Social Security Act is remedial and is to be construed liberally, the materiality of new evidence "should not be tested as strictly in the administrative, as in the judicial context." *Booz*, 734 F.2d at 1381.

The Court finds Petitioner has established a reasonable possibility that the outcome of this matter would be different if the ALJ had the 2016 imaging report and Dr. Niska's records before her for consideration prior to issuing her August 1 decision. In connection with her decision, the ALJ expressly found that there was "no objective medical evidence confirming the existence of a stroke," and therefore concluded it was a

---

[3] Other treatment notes for the period between September 12, 2016, and October 4, 2016, do not appear to be relevant to the time period prior to August 1, 2016, as they relate to psychotherapy services and assistance with Petitioner's disability application. Petitioner does not contest the exclusion of these other records from the administrative record, and only contests the exclusion of the October 4, 2016 treatment note related to Petitioner's stroke symptoms and Dr. Niska's review of the CT scan report.

"non-medically determinable impairment" at step two of the sequential process. (AR 34.) Neither Dr. Jahnke nor Dr. Veraldi, who both testified at the hearing and opined regarding Petitioner's physical and mental RFC, respectively, considered Petitioner's allegations about a stroke in her history. (AR 33, 54, 65.) Further, the ALJ relied upon the absence of objective evidence confirming a stroke to discount Petitioner's credibility regarding her complaints of vision problems, memory loss, and left sided weakness. (AR 38.) These documents would have provided objective support for Petitioner's claims she had suffered a stroke, and for Petitioner's claims she suffered vision problems, memory loss, and weakness as a result.

Respondent argues that the new evidence does not meaningfully affect the ALJ's analysis, because the ALJ found Petitioner less than fully credible because she made inconsistent statements about when she suffered a stroke. The Court finds that the ALJ's reasoning is flawed given the facts of this case. Here, objective findings established Petitioner's borderline working memory and borderline full scale IQ, which the ALJ found to be a severe impairment. In other words, the ALJ penalized Petitioner for having a poor memory, yet Petitioner's poor memory likely is a result of her organic brain disorder. Further, it appears the ALJ determined Petitioner's inconsistent statements

regarding when her stroke occurred may have led to her conclusion that the stroke did not occur. (*See* AR 38.)[4]

The Court therefore finds the Appeals Council committed error when it failed to recognize that the new evidence both related to impairments existing prior to the ALJ's decision, and was material to the outcome of the proceedings before the ALJ. Therefore, on remand, the ALJ must consider the evidence of Petitioner's stroke and the residual symptoms from the same in the context of the entire record, including the context of re-evaluating Petitioner's credibility and determining her RFC.

## 2. Lay witness testimony

Petitioner raises as error the ALJ's failure to discuss the hearing testimony of Petitioner's sister, Cheryl Teets, in the ALJ's decision. (Dkt. 13 at 6, 12.) Petitioner contends her sister's testimony corroborates her complaints of fatigue, memory loss, and cognitive difficulties as they relate to her daily activities. Respondent argues the Court should decline the invitation "to develop the bare assertion of legal error." However, the error is blatant.

An ALJ must consider evidence from sources other than the claimant, including

---

[4] The Court finds ALJ Palachuk's conclusion flawed even in the absence of objective medical imaging test results submitted to her. A prior disability determination dated December 17, 1999, which is discussed in more detail herein, expressly found that the record established Petitioner "had suffered a right medial cerebral territory infarct." (AR 159.) The ALJ in that prior matter relied upon a report prepared by Dr. Rehnberg regarding the effects of Petitioner's stroke. (AR 160.) It is not clear why ALJ Palachuk expressly disregarded the factual findings of the prior 1999 written determination, which clearly established Petitioner suffered a stroke based upon objective medical evidence. The absence of these older medical records in the proceeding before ALJ Palachuk does not negate the occurrence of the incident.

family members and friends, to determine the severity of a claimant's impairment. 20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must consider, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v.Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

"[W]here the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

The ALJ discounted Petitioner's credibility because she did not consistently report memory loss or fatigue to her health care providers. (AR 39.) However, Ms. Teets, who testified that she visits Petitioner at least once a week, corroborated Petitioner's complaints of fatigue and memory loss. Ms. Teets testified that Petitioner has difficulty understanding questions and remembering dates, names, and other information. (AR 79.) Ms. Teets testified also regarding her observations that Petitioner struggles physically, becomes short of breath, or appears tired, even when sitting down. (AR 80.)

The ALJ also discounted Petitioner's credibility, because Petitioner was able to complete all housework, get along with others, and manage money, which required "significant cognitive abilities." (AR 39.) But Ms. Teets testified to Petitioner's hoarding behavior and difficulty managing her household after her stroke, as well as to her tendency to become irritable and overwhelmed for no apparent reason. (AR 79-80.)

Lay witness testimony concerning Petitioner's symptoms or how an impairment affected Petitioner's ability to work is competent evidence and cannot be disregarded without comment. *Nguyen*, 100 F.3d at 1467. Here, competent lay witness testimony directly contradicted the ALJ's stated reasons for finding Petitioner not fully credible, and corroborated Petitioner's subjective complaints of memory loss, fatigue, and cognitive difficulties as they related to her daily activities. (AR 39). The ALJ's decision is devoid of any discussion regarding Ms. Teet's testimony and observations.

The Court finds the ALJ erred because she did not discuss relevant lay witness testimony. Respondent failed to raise the harmless error standard.[5] Accordingly, the Court cannot find that the ALJ's decision was supported by substantial evidence. (AR 39, 79-80.)

## 3. Credibility of Petitioner

The ALJ determined Petitioner suffers from borderline intellectual functioning,

---

[5] *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.). The Court finds the harmless error standard would not apply here for the reasons discussed below regarding Petitioner's credibility.

which restricts her to unskilled work involving simple, routine tasks in a predictable work environment. As for her physical RFC, the ALJ found there was no objective evidence to support Petitioner's subjective complaints of fatigue, left sided weakness, and vision problems. Accordingly, the ALJ determined that Petitioner could perform light work with some postural restrictions, accounting for her obesity. The ALJ's determination that Petitioner lacked credibility was crucial to his assessment of her mental and physical impairments and her resulting RFC.

Petitioner argues the ALJ's adverse credibility finding is not supported by substantial evidence in the record. She specifically challenges the following aspects of the ALJ's adverse credibility determination: lack of objective medical evidence supporting Petitioner's claims of a stroke, vision problems, left sided weakness, loss of memory, and fatigue; failure to seek treatment for mental impairments; poor work history; and high functioning activities of daily living.[6]

To find Petitioner's testimony regarding the severity of her impairments unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

---

[6] Respondent argued the ALJ's conclusion regarding Petitioner's mostly successful diabetes management was supported by substantial evidence. In her opening brief, Petitioner did not object to the ALJ's finding that her diabetes was well controlled with medication and diet when Petitioner complied with physician recommendations regarding the same. The Court therefore does not address this aspect of the ALJ's credibility determination, which found Petitioner's complaints about the severity and limiting effects of her diabetes not entirely credible, and that symptoms of diabetes therefore did not result in disabling physical limitations. (AR 38.) *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments which can be controlled with treatment are not considered disabling).

discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

The ALJ may consider many factors in weighing a claimant's credibility, including claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p. If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment

for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### *Objective Medical Evidence*

The ALJ's first reason for discrediting Petitioner --- that the objective medical evidence does not support the level of physical and mental limitation claimed --- is legally deficient. (AR 37.) The ALJ inverted the requisite test for assessing a claimant's credibility, which requires that "[c]areful consideration" be given to any evidence about symptoms "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." *See* SSR 96–8p, 1996 WL 374184, at *5; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *See* SSR 96–7p, 1996 WL 374186, at *1; 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).

Here, the ALJ found Petitioner's physical impairments related to her obesity to be severe, but concluded the medical evidence "does not support a finding that these conditions are disabling," because no treating medical provider provided an opinion to that effect. (AR 37-38.) The Court finds the reason invalid, as none of Petitioner's treating physicians were asked to provide an opinion regarding Petitioner's physical limitations related to her obesity. Put another way, the absence of an opinion from a treating provider regarding the effects of Petitioner's obesity does not equate to a finding

that Petitioner's obesity had no effect on Petitioner's ability to work. Further, the ALJ's conclusion is belied by Dr. Jahnke's expert opinion---she testified at the hearing that Petitioner's obesity would result in specific functional limitations.

Second, the ALJ cites to Petitioner's normal physical examinations as a reason for discrediting Petitioner's accounts of pain, weakness and fatigue. However, the ALJ failed to discuss the lay witness testimony corroborating Petitioner's testimony about her fatigue. And, as noted by Petitioner in her brief, the ALJ did not consider that Petitioner, lacking financial resources, sought treatment mainly for diabetes management, which was not focused upon treating Petitioner's other impairments.[7]

Next, the ALJ found Petitioner did not report "*any* vision problems," and "consistently denied any fatigue," which is not accurate based upon a review of the record as a whole. While the ALJ cited to records where Petitioner allegedly denied such symptoms on given dates,[8] other records belie the ALJ's assertion that Petitioner never complained about such symptoms or that there was no objective medical evidence of an underlying impairment. For instance, ophthalmology records from 2008 through 2012 reference "stroke." (AR 390, 400, 403, 405, 406, 407, 408.) These same records establish Petitioner suffers from blurry vision, glaucoma, cataracts, and hypertensive retinopathy. (AR 393.) Vision field testing in both eyes also revealed that Petitioner's visual acuity was outside normal limits, because of visual field loss in the lower left quadrant of both

---

[7] As discussed previously, the ALJ must consider evidence of Petitioner's stroke on remand.

[8] These records contain no narrative or other statements from Petitioner.

eyes. (AR 401-408.) At an office visit on November 12, 2013, Petitioner complained of

blurred vision. (AR 565.) And at the hearing, Petitioner testified she had vision problems.

(AR 74, 75.)

Petitioner testified also about ongoing weakness on the left side. (AR 74, 75.)

Petitioner alleged weak grip and reduced left sided vision when applying for benefits.

(AR 271, 274, 287, 292.) At office visits to Dr. Niska on November 12, 2013, and Rana

Wright, MA-C, on August 7, 2014, she reported "burning of extremities," as well as

"fatigue or loss of energy." (AR 565, 601.) Petitioner's sister, Ms. Teets, testified at the

hearing concerning her own observations of Petitioner's fatigue, as discussed above.

Later treatment records and a CT scan report submitted to the Appeals Council establish

Petitioner had suffered a stroke long before the hearing before the ALJ, with

corresponding loss of left-hand grip strength and loss of left peripheral vision and depth

perception in the left eye, which constitute objective evidence supporting the symptoms

Petitioner reported. (AR 25.)

### *Failure to Seek Treatment*

The ALJ next discounted Petitioner's credibility concerning the effects of her

mental impairments, essentially equating Petitioner's failure to seek treatment[9] for

depression, and her "normal mental status examinations," with a finding that the effects

of her borderline intellectual functioning resulted in no more than "mild-to-moderate

---

[9] An ALJ may consider lack of treatment in evaluating symptom testimony. 20 C.F.R. §
416.929(c)(3)(v); *Burch v. Barnhart*, 400 F.3d. 676, 681 (9th Cir. 2005).

limitations on her ability to engage in basic work activities." (AR 38.) The ALJ further discredited Petitioner, because she "failed to mention *any* memory problems during the psych CE with Dr. Alexander." (AR 39.) The Court finds neither reason has merit.

The objective psychological testing that Dr. Alexander administered confirmed Petitioner's memory deficiencies. (AR 590.) Petitioner scored in the third percentile rank in working memory; the tenth percentile rank in processing speed; the thirteenth percentile rank in verbal comprehension; and the sixth percentile rank in perceptual reasoning. These scores place her in the borderline range of overall cognitive functioning. Dr. Alexander explained in her report that "inadequate working memory skills will [decrease][10] the ability to perform other mental operations efficiently." (AR 590.) Elsewhere in the report, Dr. Alexander noted "remote and immediate memory are below normal limits." (AR 591.) In other words, the fact Petitioner failed to report memory problems to Dr. Alexander is not a valid reason to discredit Petitioner's testimony about the same, because objective testing confirmed a significant memory deficit.

Second, it was error to equate the lack of treatment for depression, which is a mental health disorder separate from borderline intellectual functioning, with a conclusion that Petitioner was less than credible about her ability to function in a work

---

[10] A word appears to be missing from the quoted sentence in Dr. Alexander's report. The context suggests the Court's insertion is correct.

setting due to her intellectual deficiencies. (AR 38.)[11] Petitioner noted that her IQ scores remained stable over time, which Dr. Veraldi confirmed at the hearing. (AR 65.)[12] And as Petitioner noted, there is no indication that low IQ, or borderline intellectual functioning, is amendable to treatment. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful," it is error to rely upon a failure to seek treatment to discount a claimant's credibility).

### *Poor Work History*

The ALJ discounted Petitioner's credibility based upon an "extremely poor work history," and the fact she stopped working "because she became pregnant." (AR 39.)[13] Petitioner noted, however, that the record contains no support for the ALJ's assessment. A review of the record confirms Petitioner ceased working in 1998 because she was found disabled as of August 19, 1998, in a prior claim. (AR 161.)[14] Additional records

---

[11] In her opening brief, Petitioner did not contest the ALJ's findings that Petitioner's symptoms of depression were not disabling. *See  U.S. ex. rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 n. 1 (9th Cir.2009) (arguments raised on appeal for the first time in a reply brief are waived).

[12] The Court notes also that the 1999 ALJ determination found that Petitioner's full scale IQ was 74, and that Petitioner had "significant limitations" in her intellectual function. (AR 160.)

[13] The ALJ may discount a Petitioner's subjective complaints if Petitioner has an "extremely poor work history . . . and has shown little propensity to work in [her] lifetime…." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

[14] The ALJ's decision, dated December 17, 1999, found Petitioner met the criteria for Listing 12.02 and 12.05, and that her stroke caused "significant limitations on her ability to function." (AR 159-160.) The ALJ determined Petitioner was "disabled since August 19, 1998." (AR 160.) Petitioner's benefits were discontinued, however, in 2012 upon review of her spouse's income at that time, which disqualified her from receiving further benefits. (AR 158.)

reveal Petitioner ceased work periodically prior to 1998 due to the births of her four children in approximately 1979, 1981, 1991 and 1995. (AR 588.) these facts, which the ALJ failed to mention, reasonably explain her low total lifetime earnings of $4,600.00. (AR 39.)

### Daily Activities

The last reason given by the ALJ for discrediting Petitioner, which Petitioner disputes, is the ALJ's determination that her "reasonably high-functioning activities of daily living" undermine Petitioner's testimony about the persistence and limiting effects of her physical and mental impairments. (AR 39.) The ALJ noted Petitioner could walk for exercise; was able to care for herself by cooking meals, completing housework, and gardening; and could use the computer (Facebook), pay bills, and manage a checking account. (AR 39.)

When assessing Petitioner's activity level, the ALJ must make "specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639. "Many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ concluded that Petitioner's allegations "are not consistent with the record as a whole to the extent that…she is unable to engage in substantial gainful activity consistent with the residual functional capacity outlined herein." (AR 39.) In so doing, the ALJ made no specific findings related to Petitioner's daily activities and their transferability to specific skills, including persistence and pace attendant to occupations like small parts assembler, mail clerk, and office cleaner, to warrant an adverse credibility determination. The ALJ's conclusion that Petitioner can perform light work in occupations involving routine tasks, because Petitioner can knit, handle a checkbook, browse Facebook, cook, walk for exercise twice a week, and care for herself, without more, is not sufficient. The ALJ made no attempt to explain how these activities, which are not performed on a sustained basis, involved the same mental tasks required in a work setting.

Nor did the ALJ make any attempt to reconcile her conclusion that Petitioner could perform light work with some postural limitations with Petitioner's testimony at the hearing concerning her activity level. Light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." SSR 83-10. But Petitioner testified that, on most days, she spent "most of [her] time sitting." (AR 77-78.) If she does venture outside to walk for

an hour, she returns back, has coffee, and "sit[s] and wait[s] for dinner." (AR 73.)

Petitioner's sister corroborated her testimony.

Based upon the above, the Court finds the ALJ did not make specific findings supported by substantial evidence in the record justifying her adverse credibility finding regarding Petitioner's testimony about the severity of her impairments.

## CONCLUSION

The Appeals Council committed error when it failed to consider the newly submitted evidence both related to the period prior to the ALJ's determination, and was material to the outcome of the proceedings. Further, it was error for the ALJ to ignore the lay witness testimony, which was consistent with Petitioner's testimony about her daily activities and her mental and physical impairments. And last, the ALJ's reasons for disregarding Petitioner's testimony about the severity of her symptoms are legally insufficient. The proper course is to remand this matter for further consideration.

<u>**ORDER**</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)      This Remand shall be considered a "sentence four remand,"

consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852,

854 (9th Cir. 2002).

DATED: August 13, 2019

Honorable Candy W. Dale
United States Magistrate Judge